IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

\*

UNITED STATES OF AMERICA　　　\*

　　v.　　　　　　　　　　　　　　　\*

　　　　　　　　　　　　　　　　　　Criminal Action No. RDB-95-095

TERRY FENNER,　　　　　　　　　\*

　　Defendant.　　　　　　　　　　\*

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MEMORANDUM ORDER

In 1995, Defendant Terry Fenner ("Defendant" or "Fenner"), was convicted by a jury

on three drug-related conspiracy and firearm charges. (Sent'g. Mem. 1–2, ECF No. 214-2.)

The jury hung on a fourth charge related to the January 25, 1994 killing of Robert Holley, and

Fenner was acquitted on that count. (*Id.*) Nevertheless, the Honorable Marvin J. Garbis[1] found

by a preponderance of the evidence that Fenner was responsible for the murder. (*Id.* at 2–3.)

Pursuant to the then-mandatory Federal Sentencing Guidelines, that finding required Judge

Garbis to sentence Fenner to a total of 55 years in prison[2]—a result Judge Garbis characterized

as "a sentence for a murder for which Terry Fenner was not convicted." (*Id.* at 13.) Fenner is

---

[1] This case was originally assigned to the Honorable Marvin J. Garbis, who has since retired.

[2] As will be set forth in more detail below, Judge Garbis made two findings at sentencing: (1) that the drug conspiracy Fenner had been implicated in had involved at least 100 grams of heroin; and (2) that Fenner was responsible for Robert Holley's murder. (Sent'g Mem. 2–3, 5–7.) The former finding doubled Fenner's statutory range on Count 1 from 0–20 years to 5–40 years. (*Id.* at 5–7.) The latter required Judge Garbis to apply the Guidelines range for first degree murder to Fenner's conviction under Count 4, for possession of a firearm by a convicted felon. (*Id.* at 7–8.) The result was a Guidelines range of life imprisonment, requiring Judge Garbis to append all three counts consecutively for a total of 55 years. (*Id.* at 8–9.) Absent these findings, Counts 1 and 4 may have run concurrently, followed by a consecutive sentence of 5 years on Count 2, yielding a statutory maximum of 25 years.

now 50 years old and has been in prison for 27 years. (Fenner's Renewed Mot. Sent. Reduction 18, ECF No. 214.) Today, the Federal Sentencing Guidelines are no longer mandatory, but advisory, and courts are prohibited from enhancing a sentence beyond its statutory maximum based on facts not found by a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220 (2005); *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Now pending is Fenner's Renewed Motion for Sentence Reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (ECF No. 214.)[3] Fenner cites the intervening changes in sentencing law, the severity of his sentence, the disparity of his sentence relative to his co-defendant, and "his superlative post-offense rehabilitation" as grounds to reduce his original sentence "to time served, which amounts to a sentence in excess of 30 years with good time credit." (Fenner's Mot. 1–2.) The Government opposes this motion. (Government's Resp. Opp., ECF No. 221.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons that follow, Fenner's Renewed Motion for Sentence Reduction (ECF No. 214) is **GRANTED IN PART**. A hearing shall be scheduled to determine the reduced sentence that shall issue.

## BACKGROUND

On February 1, 1994, the State of Maryland charged Terry and Herbert Fenner with the murder of Robert Holley, who was shot and killed in East Baltimore on January 25, 1994. (Fenner's Mot. 2–3; PSR ¶ 7, ECF Nos. 214-9, 216.) After an acquittal before a jury in the

---

[3] On July 24, 2020, Fenner filed a previous *pro se* motion for compassionate release. (ECF No. 209.) This Court denied this motion by memorandum order on June 29, 2021. (ECF No. 212.) That order was subsequently withdrawn on July 1, 2021, in light of Fenner's instant Renewed Motion for Sentence Reduction. (ECF No. 219.)

Circuit Court for Baltimore City, the federal government indicted Terry and Herbert Fenner on drug-related charges but declined to charge the brothers with murder, as had been charged in the Maryland prosecution. (Fenner's Mot. 3) In 1995, a federal jury convicted Terry Fenner[4] of: (1) conspiracy to distribute cocaine and heroin, in violation of 21 U.S.C. § 846 (Count 1); (2) use of a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 2); and (3) possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count 3). (PSR 2.)

The jury hung on Count 3, which charged Defendant with firearm use in connection with Mr. Holley's death, and the court entered a judgment of acquittal, as "the evidence plainly established that Terry Fenner had terminated his membership in the conspiracy prior to the murder of Robert Holley." (PSR ¶ 1; Sent'g Mem. 1–2.) At sentencing, Judge Garbis separately found that the Defendants had murdered Mr. Holley, (Sent'g Mem. at 2–3), and held that he was compelled to conclude "beyond any reasonable doubt" that "Terry Fenner willfully, deliberately, intentionally, and with premeditation shot and killed Robert Holley on January 25, 1994" in circumstances that amount to "the crime of murder in the first degree under Maryland law." (*Id.* at 2–3.) Moreover, although the jury did not find any quantity amounts, this Court concluded based on the scope of the conspiracy "that 100 grams or more of heroin were reasonably foreseeable to Mr. Fenner." (Sent'g Mem 5–7.)

Applying the murder cross-reference under U.S.S.G. § 2A1.1, Fenner was assigned a base offense level of 43 and a criminal history category of VI, requiring this Court to impose

---

[4] Herbert Fenner was convicted on two counts of being a felon in possession of a firearm, and one count of failure to register a sawed-off shotgun. (Sent'g Mem. 1.)

a life sentence for Count 4 under the then-mandatory Sentencing Guidelines. (PSR ¶ 11.) As

the statutory maximums associated with the crimes of conviction did not allow a life sentence,

U.S.S.G. § 5G1.2 required this Court to append the maximum sentences for each count

consecutively, yielding a total sentence of 55 years. (Sent'g Mem. 9.) Judge Garbis expressed

interest in reducing Fenner's sentence but was unable to identify any grounds for a downward

departure. (*Id.* at 9–13.) He stated plainly that "if [this Court] had the discretion to depart in

[Fenner's] case it would do so," in order to avoid "the imposition of a sentence for a murder

for which [he] was not convicted." (Fenner's Mot. 5; *accord* Sent'g Mem. 9–13.)

## ANALYSIS

The First Step Act of 2018, Pub. L. No. 115–391, 132 Stat. 5194, established significant

changes to the procedures involving compassionate release from federal prison. Prior to the

First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i) provided the Bureau of Prisons ("BOP") with sole

discretion to file compassionate release motions with the Court. With the passage of the First

Step Act, defendants are now permitted to petition federal courts directly for compassionate

release whenever "extraordinary and compelling reasons" warrant a reduction in sentence. The

Act permits a defendant to seek a sentence reduction after he "has fully exhausted all

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the

defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of

the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Once these mandatory

conditions are satisfied, this Court may authorize compassionate release upon a showing of

"extraordinary and compelling reasons" warranting a reduction and after weighing the factors

presented in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)(i).

I.      **Administrative Exhaustion Requirements**

Fenner has satisfied the preconditions to filing his Motion for Compassionate Release. On September 23, 2020, Fenner submitted a "Request for Administrative Remedy," addressed to Warden R. Maldonado of FCI Cumberland, Md., requesting his compassionate release. (Req. for Admin. Remedy, ECF No. 214-24.) On October 10, 2020, the warden denied this request. (Resp. to Req., ECF 214-25.) Fenner appealed to the Regional Director of the Bureau of Prisons on October 26, 2020. (Regional Admin. Remedy Appeal, ECF No. 214-26.) This appeal was unsuccessful. (Resp. to Appeal, ECF No. 214-27.) As 30 days have elapsed since Rogers' request was submitted to the warden, his motion is properly before this Court.[5] *See* 18 U.S.C. § 3582(c)(1)(A).

II.     **Extraordinary and Compelling Reasons**

The United States Sentencing Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Of relevance here, the Commission has determined that "extraordinary and compelling reasons" exist where a defendant is "suffering from a serious physical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Similarly, a defendant who is "(i) at least 65 years old;

---

[5] The Government argues that Fenner has failed to exhaust administrative remedies. (Government's Resp. 18.) The Government points to a separate motion for compassionate relief that was filed on June 24, 2020, (ECF No. 209), and observed that Fenner never appealed the Warden's denial of his institutional request related to that motion. (Government's Resp. 18.) This argument misstates the relevant standard, as Fenner may seek a sentence reduction after either he has "fully exhausted all administrative rights" or upon "the lapse of 30 days from the receipt of [his] request by the warden." 18 U.S.C. § 3582(c)(1)(A). He is not required to satisfy both conditions. Moreover, this argument is entirely inapposite, as it relates to a separate motion that is not before this court.

(ii) is experiencing a serious deterioration in physical or mental health because of the aging

process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment,

whichever is less," faces extraordinary and compelling circumstances that may justify release.

U.S.S.G. § 1B1.13 cmt. n.1(B). Finally, the Commission has authorized the Bureau of Prisons

to identify extraordinary and compelling reasons "other than, or in combination with" the

reasons identified by the Commission. U.S.S.G. § 1B1.13 cmt. n.1(D).

Although potentially useful guides, neither the Sentencing Commission's guidelines nor

the Bureau of Prisons' regulations constrain this Court's analysis of a compassionate release

motion filed by a defendant. *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020) (holding

that U.S.S.G. § 1B1.13 is not an "applicable policy statement" for compassionate release

motions filed by a defendant in the wake of the First Step Act).[6] As Judge Blake of this Court

has recognized, the First Step Act embodies Congress's intent to reduce the Bureau of Prisons'

authority over compassionate release petitions and authorizes the district courts to exercise

their "independent discretion to determine whether there are 'extraordinary and compelling

reasons' to reduce a sentence." *United States v. Bryant*, CCB-95-0202, 2020 WL 2085471, at *2

(D. Md. Apr. 30, 2020); *accord McCoy*, 981 F.3d at 281 (holding that "the First Step Act allows

courts independently to determine what reasons, for purposes of compassionate release, are

'extraordinary and compelling'" (quoting *United States v. Brooker*, 976 F.3d 234, 234 (2d Cir.

2020)).

---

[6] The Government devotes a significant portion of its brief to the proposition that *McCoy* was incorrectly decided and should be disregarded. (Gov't Resp. Opp. 9–17.) This argument is unavailing. *McCoy* is binding Fourth Circuit authority, and the Government "is no freer to ignore it than this Court." *United States v. Williams*, No. PWG-90-0135, ECF No. 1307 n.3 (D. Md. Mar. 12, 2021) (Grimm, J.).

Fenner correctly argues that sentencing law has changed in dramatic ways in the nearly three decades since he was convicted. Intervening developments in sentencing law may constitute extraordinary and compelling reasons that justify a motion for a sentence reduction. *See, e.g.*, *United States v. Day*, 474 F. Supp. 3d 790, 798 n.16 (E.D. Va. 2020) (collecting cases); *United States v. Parker*, 461 F. Supp. 3d 966, 979–81 (C.D. Cal. 2020); *United States v. Smith*, 379 F. Supp. 3d 543, 546 (W.D. Va. 2019) ("Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence and this court declines to do so."). Among such changes, the Supreme Court has held that any facts used to raise the statutory maximum or mandatory minimum penalty for a crime must be established by a jury beyond a reasonable doubt—not found by the judge on the preponderance of the evidence. *See generally Alleyne v. United States*, 570 U.S. 99 (2013); *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Moreover, following the Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the Sentencing Guidelines are no longer mandatory, but instead serve as "the starting point and the initial benchmark" for judges. *Gall v. United States*, 552 U.S. 38, 49–50 (2007); *Kimbrough v. United States*, 552 U.S. 85, 101–02 (2007); *see also Rita v. United States*, 551 U.S. 338, 347–48 (2007).

These changes to the constitutional landscape of sentencing would have had dramatic effects on Fenner's sentence if he were convicted today. Fenner's initial offense level was calculated based on this Court's independent finding that the conspiracy had involved at least 100 grams of heroin, thereby doubling his statutory range on Count I from 0 to 20 years to 5 to 40 years. (Sent'g Mem. 5-7.) Additionally, Counts I, II, and IV were appended consecutively for a total sentence of 55 years due to a judicial finding that he was responsible for Robert

Holley's murder—notwithstanding that the jury hung on the only related count, Count III. (*Id.* at 2–3.) Judge Garbis stated that "if [the Court] had the discretion to depart in this case[,] it would do so," and made comments throughout the sentencing proceedings to this effect. (*See* Sent'g Mem. 12; *accord* Fenner's Mot. 12–14; *see, e.g.*, Sent'g. Trans. 4–6, ECF No. 214-9.) Accordingly, this Court has little difficulty concluding that Fenner's sentence, calculated based on drug quantity amounts that were not found by the jury and enhanced by "a murder for which [he] was not convicted," (Sent'g Mem. 13), is a violation of both *Booker* and *Apprendi*. As this result would be unconstitutional today, extraordinary and compelling circumstances make Fenner eligible for a sentence reduction.

Other factors support this determination. Fenner's relatively young age at his time of incarceration, his subsequent rehabilitation, and the length of time he has served all weigh in favor of considering a reduction in his sentence. *See, e.g.*, *United States v. Ramsay*, 538 F. Supp. 3d 426 (S.D.N.Y. 2021); *United States v. Chaverra-Cardona*, No. 87 CR 340, 2021 WL 131437, at ** 2–3 (N.D. Ill. Jan. 14, 2021). This Court has also held that an egregious disparity in sentences between co-defendants may qualify a defendant for sentence reduction. *See United States v. Edwards*, No. PJM-05-179, 2021 WL 1575276, at *2 (D. Md. Apr. 22, 2021); *United States v. Payton*, No. PJM-06-341, 2021 WL 927631, at *2 (D. Md. Mar. 11, 2021). In this case, Fenner received a sentence three times that of his brother, who had been involved in the same conspiracy and was also deemed to be culpable for Holley's murder. (Fenner's Mot. 17.) This

disparity, a direct product of the rigid application of the pre-*Booker* Guidelines,[7] is an extraordinary and compelling circumstance that qualifies for relief.

**III.      Application of 18 U.S.C. § 3553(a)**

As with any sentencing decision, a court addressing a compassionate release motion must conduct an "individualized assessment" under § 18 U.S.C. 3553(a) to determine a defendant's eligibility for a sentence reduction. *McCoy*, 981 F.3d at 286. These factors require this Court to consider: (1) the defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offense; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. 18 U.S.C. § 3553(a); *Bryant*, 2020 WL 2085471 at *4. On balance, these factors suggest that a sentence reduction is justified in this case.

The seriousness of Fenner's crimes is undeniable. The Government argues that Fenner "did not just participate in drug trafficking, but actually perpetuated the most serious act of violence—the take of another human's life." (Government's Resp. 37.) Consistent with this assessment, Fenner was convicted of four offenses between the ages of 18 and 22. (*Id.* at 37.) However, Fenner was *acquitted*—not convicted—on the charges related to Mr. Holley's death, and the record indicates that he was involved in the drug conspiracy for a "very brief (3 to 5

---

[7] Although Terry and Herbert Fenner faced slightly different charges, both were assigned an offense level of 43. (*Id.*) However, the sentencing judge was able to work within the Sentencing Guidelines to reduce Herbert Fenner's offense level to 33. (*Id.*). As a result, Herbert Fenner received a 17.5-year sentence, while Defendant was sentenced to 55 years. (*Id.* at 17–18.)

days) period of employment." (Sent'g. Mem. 5.) Accordingly, as Fenner observes, the majority

of his sentence arises from a crime for which he was not convicted, based on facts that were

not found by the jury—a clear violation of the Sixth Amendment under modern jurisprudence.

(Fenner's Mot. 30.) Relying on those same facts to deny Fenner relief from an unconstitutional

sentence would be contrary to basic notions of "just punishment."

Moreover, Fenner's offenses are now remote in time, and his "educational progress,

disciplinary improvement, leadership within his community, and professional achievements"

indicate rehabilitation. (Fenner's Mot. 21.) *See Pepper v. United States*, 562 U.S. 476, 491 (2011)

(holding that "evidence of postsentencing rehabilitation may be plainly relevant to 'the history

and characteristics of the defendant'" and "'the need for the sentence imposed'"). Fenner has

completed his GED and over 40 creative and practical courses, (2021 Progress Rep. 1–4, ECF

No. 214-5; Transcript, ECF No. 214-4), he has taken suicide prevention training to assist

fellow inmates, (Certificates, ECF No. 214-6; T. Fenner Letter 2, ECF No. 214-7), and the

Bureau of Prisons has described him as a "reliable" employee in its workforce development

program. (UNICOR Work Product, ECF No. 214-31; Job Desc. 3, ECF No. 214-7; UNICOR

Performance Eval., ECF No. 227-1.) He has an exceptional disciplinary record, with only 12

infractions over 27 years in custody—almost half of which were issued during his first 5 years

in prison, and absolutely none of which occurred in the last 13. (Inmate Discipline Data, ECF

No. 214-8.) Additionally, Fenner has accepted full responsibility for his actions, evidenced by

his completion of anger management and victim impact counselling courses, which he claims

have been "instrumental in helping [him] see how his prior decisions affected society at large."

(Fenner's Mot. 21.)

In 2020, the Bureau of Prisons stated that Fenner "has maintained clear conduct for 12 years," exhibiting "a good rapport with staff and inmates" and "a positive attitude." (2020 Progress Report 4, ECF No. 214-30.) This is reinforced by the outpouring of support he has received from fellow inmates, who have letters in support of his outlook, the mentorship he has provided to fellow inmates, his remorse and acceptance of responsibility, and his success in BOP educational programs. (Bowling Letter, ECF No. 227-2; Quinanes Letter, ECF No. 227-3; Velazquez Letter, ECF No. 227-4; Williams Letter, ECF No. 227-5; Franklin Letter, ECF No. 227-6; Thomas Letter, ECF No. 227-7; Calhoun Letter, ECF No. 227-8; Howard Letter, ECF No. 227-9; Meza Letter, ECF No. 227-10; Tinsly Letter, ECF No. 227-11; Parker Letter, ECF No. 227-12; Ball Letter, ECF No. 227-13; Darryl Alston, ECF No. 227-14.) Cumulatively, this evidence supports a positive showing on Terry Fenner's "personal history and characteristics."

Accordingly, although a lengthy prison sentence was appropriate in light of Fenner's drug and firearm crimes, a consecutive 55-year sentence is greater than necessary to do justice in this case. During sentencing, Judge Garbis said the same, devoting a substantial portion of his sentencing memorandum to exploring possibilities for a reduction, and declaring that "[i]f [the Court] had the discretion to depart in this case it would do so." (Sent'g. Mem. 9–13). In these circumstances, a reduction in sentence is appropriate. As Judge Blake recently observed:

> Other judges in this district have similarly recognized the bluntness of mandatory life-sentences the district court was required to impose prior to Booker, and have reduced life sentences for defendants whose offenses included participation in drug-related killings or in drug conspiracies that involved murder reasonably foreseeable to them.

*United States v. Gray*, Crim. No. CCB-95-364, 2021 WL 1856649 at *11 (D. Md. May. 10, 2021) (reducing life sentence to 31 years) (citing *United States v. Hill*, No. CR JKB-96-00399, 2020 WL 2089379, at *2 (D. Md. Apr. 30, 2020); *Carter v. United States*, No. CR ELH-00-0100, 2020 WL 1914766, at *9 (D. Md. Apr. 17, 2020); *United States v. Cheese*, No. CR ELH-98-259, 2020 WL 3618987, at *10 (D. Md. July 2, 2020); *Brown v. United States*, No. CR ELH-00-0100, 2020 WL 1248950, at *10 (D. Md. Mar. 16, 2020)).

Nevertheless, while Fenner may be entitled to a sentence reduction, it does not follow that a time-served sentence is the appropriate remedy in this case. Although the prosecutor did not issue federal murder charges against Fenner, Count 3 of the Indictment charged him with using/carrying a firearm during a drug trafficking conspiracy. (Indictment 3.) The events charged in this Count referred to the murder of Robert Holley. (*Id.*). At sentencing, Judge Garbis noted that Fenner was only acquitted on Count 3 due to the *timing* of the killing—as Fenner's participation in the drug conspiracy had terminated before Holley was murdered. (Sent'g Mem. 3; PSR ¶ 11 ("It appears that the only question the jury had was whether the killing took place[] 'during' the drug conspiracy."). Moreover, Judge Garbis concluded that Terry Fenner had committed the murder "beyond any reasonable doubt." (Sent'g Mem. 3, 5 ("[I]f this Court had to make the finding beyond a reasonable doubt, it has done so.")). This Court does not take these findings lightly. Even if *Booker* and *Apprendi* had predated this case, and the murder cross-reference under U.S.S.G. § 2A1.1 had not applied, Judge Garbis's belief that Fenner had committed the murder of Robert Holley would have impacted any downward departure from the Sentencing Guidelines. That remains true today. In light of *Apprendi*, this Court will not deny Fenner's motion based on the court's independent sentencing findings.

Nevertheless, the circumstances of Holley's murder are relevant to "the nature and seriousness of the offense" and "the need to provide just punishment," two factors this Court must consider when granting a sentencing reduction in its discretion.

In light of these considerations, a resentencing hearing is appropriate to determine the proper balance of the § 3553(a) factors, and to decide what sentence shall issue upon granting Fenner's motion for a sentence reduction. *Cf. United States v. Williams*, No. 91-559-6 (TFH), 2021 WL 5206206, at *9 (D.D.C. Nov. 9, 2021); *United States v. Olivares*, No. 19-50118-01-JLV, 2021 WL 5178816, at **12–13 (D.S.D. Nov. 8, 2021); *United States v. Mamau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) (each granting compassionate release motion and ordering resentencing hearing to determine what new sentence shall issue). Accordingly, a hearing shall be scheduled to permit the Government and the defendant an opportunity to present their arguments as to the appropriate sentence reduction, consistent with the 18 U.S.C. § 3553(a) factors. In advance of this hearing, the United States Probation Office shall prepare a new Presentence Investigative Report that addresses the evidence of rehabilitation set forth in this opinion, the need to protect the public, the potential for recidivism, and the sentence Fenner would likely have received for the same conduct under today's sentencing laws.

## CONCLUSION

Accordingly, for the reasons stated above, it is HEREBY ORDERED that Defendant Terry Fenner's Motion for Sentence Reduction (ECF No. 214) pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED IN PART**. Specifically, it is ordered that:

1. This Court shall schedule a sentencing hearing to determine the sentence reduction that shall issue;

2. The United States Marshals Service shall arrange for Mr. Fenner to meet with the United States Probation Office;

3. The Probation Office shall prepare a new Pre-Sentence Investigative Report in advance of the sentencing hearing; and

4. The Clerk of Court shall deliver copies of this order to the Defendant, the United States Marshals Service, and the United States Probation Office.

Dated: April 8, 2022

_____/s/_____
Richard D. Bennett
United States Senior District Judge